IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:21-cr-0078 |
| v. | 18 U.S.C. § 1343<br>Wire Fraud<br>(Counts 1–4) |
| HARLAN BARRY COX, | |
| *Defendant.* | 18 U.S.C. § 1956(a)(1)(B)(i)<br>Money Laundering<br>(Count 5) |
| | 18 U.S.C. § 1957<br>Engaging in an Unlawful<br>Monetary Transaction<br>(Count 6) |
| | 18 U.S.C. § 1512(c)(2)<br>Obstruction of an<br>Official Proceeding<br>(Count 7) |
| | Forfeiture Allegation |

FILED
IN OPEN COURT

1 3 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**INDICTMENT**
July 2021 Term – Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

Introductory Allegations

At all times relevant to this Indictment, unless otherwise stated:

1. Defendant HARLAN BARRY COX, a resident of the Richmond, Virginia metropolitan area, was a principal and the sole member of Pimlico Exchange LLC, Preakness Exchange LLC, and Margin Street LLC, each an entity organized to do business under the laws of Virginia and based in Richmond, Virginia.

### *Scheme and Artifice to Defraud*

2.      Beginning in or about May 2018 and continuing through in or about July 2019, defendant HARLAN BARRY COX engaged in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

3.      It was the purpose and object of the scheme for COX to obtain funds from individuals by knowingly making materially false representations and promises regarding the existence and sale of purported internet-based sales businesses and to conceal from buyers and others his own identity through the use of aliases and shell companies. COX fraudulently obtained at least $666,000 from his victims through the scheme.

### *Ways, Manners, and Means of the Scheme*

The ways, manners, and means of the scheme and artifice to defraud included, but were not limited to, the following:

4.      COX caused to be listed on online marketplaces several internet-based sales businesses, including "Drone Purple" (a company that purported to sell drones), "Pelagoon" (a company that purported to sell drones), and "Margin Street" (a company that purported to serve as an online marketplace where other businesses could be bought and sold).

5.      In soliciting the sales of these supposed businesses to others over the internet, COX made and caused to be made material misrepresentations and omissions to induce individuals to purchase the businesses. The specific misrepresentations COX made to buyers varied over time, but included the following statements:

      a.      COX represented that the businesses generated millions of dollars in revenue over a preceding six-to-seven month period with net profits exceeding $1 million.

  b. COX provided bank statements for accounts listed under the names of aliases that showed hundreds of thousands of dollars in monthly deposits representing business revenue.

  c. COX provided screenshots of a payment-processing platform associated with the online businesses that showed hundreds of thousands of dollars in monthly customer payments to the businesses.

  d. Rather than use his own identity when interacting with potential buyers, COX used aliases, including "Greg Mercury," "David Hurt," "Trevor Claude," and "Wayne Kastelein."

6. When prospective buyers showed interest, COX encouraged quick closings with substantial down payments. If buyers agreed, they signed purchase agreements, which COX signed using aliases. To close the sale of the businesses, buyers were instructed to wire initial down payments to bank accounts that were controlled solely by COX.

7. In fact, the businesses created by COX were fictitious, and COX fabricated the documents he provided to buyers to support the representations made about the businesses' revenue.

8. After receiving the buyers' down payments, COX transferred those balances to other accounts controlled solely by him so that the payments could not be recalled by the buyers and to conceal the nature and location of buyers' funds. To further conceal the nature and location of buyers' funds, COX transferred money into new bank accounts he opened over time in his own name or the names of one of his businesses, including Preakness Exchange LLC and Margin Street LLC.

9. COX used the majority of the money he obtained through the fraudulent sales of fictitious online businesses for his own personal purposes, including the purchase of a Mercedes Benz G550 luxury SUV for approximately $103,000.

## COUNTS ONE THROUGH FOUR
(Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

10. The allegations contained in paragraphs 1 through 9 of this indictment are realleged and incorporated as though set forth in full here.

11. On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, the defendant, HARLAN BARRY COX, knowingly caused to be transmitted by means of wire communication in interstate commerce, the writings, signs, signals, pictures, and sounds described below, each transmission constituting a separate count of this indictment:

| Count | Date of Wire | Wire Communication |
|---|---|---|
| 1 | June 8, 2018 | Wire communication from a location outside of the Commonwealth of Virginia to cause the transfer of $344,000 from Company 1 on behalf of Victim 1 to a Bank of America bank account ending in 4115 held in the name of Pimlico Exchange LLC |
| 2 | May 2, 2019 | Wire communication from a location outside of the Commonwealth of Virginia to cause the transfer of $150,000 from Victim 2 to a SunTrust bank account ending in 1758 held in the name of Margin Street LLC |
| 3 | June 24, 2019 | Wire communication from a location outside of the Commonwealth of Virginia to cause the transfer of $60,000 from Victim 3 to an Atlantic Union bank account ending in 5045 held in the name of Margin Street LLC |
| 4 | July 23, 2019 | Wire communication from a location outside of the Commonwealth of Virginia to cause the transfer of $80,000 from Victim 4 to a Village Bank account ending in 5114 and held in the name of Margin Street LLC |

(In violation of Title 18, United States Code, Section 1343.)

## COUNT FIVE
(Money Laundering)

THE GRAND JURY FURTHER CHARGES THAT:

12. The allegations contained in paragraphs 1 through 9 of this indictment are realleged and incorporated as though set forth in full here.

13. On or about June 13, 2018, in the Eastern District of Virginia, the defendant, HARLAN BARRY COX, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, that is, a wire transfer of $335,575.34 from a Bank of America bank account ending in 4115 held in the name of Pimlico Exchange LLC to a Wells Fargo bank account ending in 1292 held in the name of Harlan Cox, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

(In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).)

## COUNT SIX
(Engaging in an Unlawful Monetary Transaction)

THE GRAND JURY FURTHER CHARGES THAT:

14. The allegations contained in paragraphs 1 through 9 of this indictment are realleged and incorporated as though set forth in full here.

15. On or about June 15, 2018, in the Eastern District of Virginia, the defendant, HARLAN BARRY COX, knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the defendant caused the wire transfer of $101,000 from a Wells Fargo bank account ending in 1292 held in the name of Harlan Cox to a Comerica Bank account ending in 7077, such property having been derived from a specific unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1341.

(In violation of Title 18, United States Code, Section 1957.)

## COUNT SEVEN
(Obstruction of an Official Proceeding)

THE GRAND JURY FURTHER CHARGES THAT:

16. The allegations contained in paragraphs 1 through 9 of this indictment are realleged and incorporated as though set forth in full here.

17. On or about February 3, 2020, in the Eastern District of Virginia and elsewhere, the defendant, HARLAN BARRY COX, did corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before a federal grand jury in the Eastern District of Virginia, and attempted to do so by signing and causing to be filed in a court of law a false declaration sworn under penalty of perjury.

(In violation of Title 18, United States Code, Section 1512(c)(2).)

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure as to Counts One through Four of this Indictment, the defendant, upon conviction of any of the offenses, shall forfeit to the United States any property, real or personal, which constitutes, or is derived from, proceeds traceable to the offense, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

The property subject to forfeiture includes but is not limited to the following:

A sum of money of at least $666,000, which represents the total proceeds of the offenses charged in Counts One through Four of this Indictment, which shall be reduced to a money judgment against the defendant in favor of the United States.

The defendant is further advised that if convicted of Counts Five or Six of this Indictment, he shall forfeit to the United States any property, real or personal, involved in the

offense, or any property traceable to the offense, pursuant to 18 U.S.C. § 982(a)(1).

The property subject to forfeiture includes but is not limited to the following:

A sum of money of at least $436,575.34, which represents the property involved in the offenses charged in Counts Five and Six of this Indictment, which shall be reduced to a money judgment against the defendant in favor of the United States.

If the property subject to forfeiture meets the requirements of 21 U.S.C. § 853(p), the United States will seek an order forfeiting substitute assets.

(All in accordance with Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p)).

A TRUE BILL:

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

By: *[signature]*
Kevin S. Elliker
Assistant United States Attorney

8