IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HARLAN BARRY COX,<br><br>*Defendant.* | Case No. 3:21-cr-00078-DJN |

## STATEMENT OF FACTS

The United States and the defendant agree that the factual allegations contained in this Statement of Facts and in Count Two of the Indictment are true and correct, and that the United States could have proven them beyond a reasonable doubt at a trial.

1. Between in or about May 2018, continuing through in or about July 2019, in the Eastern District of Virginia and elsewhere, the defendant, HARLAN BARRY COX, did unlawfully and knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing the scheme and artifice to defraud, transmitted and caused transmission of writings, signs, and signals in interstate commerce, in violation of Title 18, United States Code, Section 1343.

2. As part of his scheme, COX created several internet-based sales businesses, including Drone Purple (a company that purported to sell drones), Pelagoon (a company that purported to sell drones), and Margin Street (a company that purported to serve as an online marketplace where other internet-based businesses could be bought and sold). None of these purported businesses were going concerns with legitimate business activity. COX listed those businesses for sale on online marketplaces.

1

3. In soliciting the sales of these supposed businesses to others through online marketplaces, COX made and caused to be made material misrepresentations and omissions to induce individuals to purchase the businesses. The specific misrepresentations COX made to interested buyers varied over time, but included the following statements:

    a. COX falsely represented that the businesses generated millions of dollars in revenue over a preceding six-to-seven-month period with net profits exceeding $1 million.

    b. COX provided fraudulent bank statements for accounts listed under the names of his aliases that showed hundreds of thousands of dollars in monthly deposits representing purported business revenue.

    c. COX provided screenshots of a payment-processing platform associated with the online businesses that purportedly showed hundreds of thousands of dollars in monthly customer payments to the businesses.

4. Using alias names (*e.g.*, Wayne Kastalien, David Hurt, Greg Mercury, and Trevor Claude) and multiple email accounts, COX sent emails to prospective buyers of his fictitious companies. These emails contained material misrepresentations and omissions to induce individuals to purchase the businesses.

5. When prospective buyers showed interest, COX encouraged quick closings with substantial cash down payments. If buyers agreed, they signed purchase agreements, which COX signed using his aliases. To close on the sale of the businesses, the buyers were instructed to wire initial down payments to bank accounts that were controlled solely by COX.

6. In fact, the businesses created by COX were fictitious, and COX fabricated the documents he provided buyers to support his representations about the businesses' revenue.

Using his own personal bank statements as a template, COX fabricated the statements he provided to buyers by: (a) changing the names on the accounts to match the aliases he used; (b) changing or redacting addresses and other account information to hide his true identity; and (c) altering the transaction details on the bank statements to give the false appearance of hundreds of thousands of dollars in monthly revenue from the particular business being sold.

7. Similarly, the screenshots from the payment-processing platform, which he provided to buyers to corroborate revenue shown in the false bank statements, were fabricated by COX to give the false appearance of hundreds of thousands of dollars in monthly revenue from the associated business.

8. After receiving the buyers' down payments, COX transferred those balances to other accounts controlled solely by him. COX then quickly transferred the money into new bank accounts he opened over time. During the course of the conduct, COX used at least two Bank of America accounts; then moved to one Wells Fargo account; then split money to four SunTrust accounts; then opened additional accounts at Atlantic Union Bank, Village Bank, and Virginia Credit Union.

9. COX used most of the money he obtained through the fraudulent sales of the fictitious online businesses to support his lifestyle and pay personal expenses, including various trips to Miami, New York City, and Los Angeles, and the purchase of a $103,000 luxury Mercedes SUV. The majority of COX's spending was done by check or debit cards associated with COX's bank accounts.

10. In furtherance of this scheme to defraud, COX knowingly caused interstate wirings, including wire transfers of monies from victim accounts to accounts controlled by COX.

11. As a result of this scheme to defraud, COX fraudulently obtained at least

$706,000 from five (5) victims.

12. In or about April 2019, COX offered his business, Margin Street LLC, for sale online, using the alias name "David Hurt." In the listing, COX represented that Margin Street LLC was a "platform [that] enables the owner to buy & sell an unlimited amount [sic] of businesses from anywhere on the planet." COX further represented that the purchase of this company comes with "custom contracts for 2 deals worth[] $11,271,817 net. . ."

13. On or about April 26, 2019, COX, using the alias name "David Hurt," sent due diligence information about Margin Street LLC to the individual identified in the Indictment as Victim 2, who was considering buying Margin Street LLC based on COX's false representations. COX's due diligence material consisted, in part, of a bank statement showing Margin Street LLC's ending account balance of $5,847,982.40 as of March 31, 2019. COX forged this bank statement, using his own banking statement as a template.

14. On or about April 26, 2019, Victim 2 asked COX whether the roughly $5.9 million is "for the company [or] what the owner makes. . ." COX replied: "That is net profit directly to the owner after all expenses." In truth, Margin Street LLC never had any going concern or legitimate business activity. On or about April 30, 2019, referencing fictitious earnings from the past, COX stated to Victim 2, "I can personally guarantee you'll have no trouble earning the same amount I've made."

15. Relying on COX's misrepresentations, on or about May 2, 2019, Victim 2 caused the wiring of $150,000 to COX as a down payment for Margin Street LLC from Victim 2's account with Branch Banking & Trust Company (BB&T) in Winston-Salem, North Carolina to COX's SunTrust account ending in 1758 in Richmond, Virginia. Victim 2 resided in Pasadena, Maryland.

16. The actions taken by the defendant, as described above, were taken willfully and knowingly. The defendant did not take those actions by accident, mistake, or with the belief that they did not violate the law.

17. The preceding includes only those facts necessary to establish the defendant's guilt as to the offense to which he is entering a guilty plea. It does not necessarily reference all information known to the government or to the defendant about the criminal conduct at issue.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Michael C. Moore
Avishek Panth
Assistant United States Attorneys

I have consulted with my attorney regarding this Statement of Facts. I knowingly and voluntarily agree that each of the above-recited facts is true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt.

Oct. 22. 2021
Date

Harlan Barry Cox
Defendant

We are counsel for defendant, Harlan Barry Cox. We have carefully reviewed this Statement of Facts with him and, to our knowledge, his decision to agree to this Statement of Facts is an informed and voluntary decision.

10-22-2021
Date

Nia A. Vidal
Attorney for the Defendant

10/22/21
Date

Joseph S. Camden
Attorney for the Defendant